No. 14-16514

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

KIRK C. FISHER,

Plaintiff-Appellant,

v.

LOUIS KEALOHA, et al.

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the District of Hawaii
Civil Case No. 11-00589 (The Honorable Alan C. Kay)

_____

## OPENING BRIEF OF APPELLANT KIRK C. FISHER

_____

LAW OFFICES OF DONALD L. WILKERSON
DONALD L. WILKERSON
1003 Bishop Street, Suite 703
Honolulu, Hawaii 96813
Telephone: (808) 533-4447; Email: don@allislandslaw.com

TE-HINA ICKES
1003 Bishop Street, Suite 703
Honolulu, Hawaii 96813
Telephone: (808) 533-4447; Email: tehina@gmail.com

ALAN BECK
4780 Governor Drive
San Diego, California 92122
Telephone: (808) 295-6733; Email: ngord2000@yahoo.com

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ vi-viii

JURISDICTIONAL STATEMENT ...........................................................................1

STATEMENT OF THE ISSUES PRESENTED

...........................................................1

REVIEWABILITY AND STANDARD OF REVIEW ...........................................2

STATEMENT OF THE CASE ........................................................................... 2-3

STATEMENT OF FACTS ................................................................................. 3-8

SUMMARY OF ARGUMENT ............................................................................. 8

ARGUMENT .................................................................................................. 9-27

    <u>Heller</u> Holds Common Law Felons Are Disqualified From
    Second Amendment Rights ................................................................... 12-18

    <u>Chovan</u> Supports the Need for Restoration Procedures ........................ 18-19

    Other Modern Jurisprudence Supports the Need for
    Restoration Procedures ......................................................................... 19-21

    Mr. Fisher Only Challenges Hawaii Law ............................................. 21-23

    Restoring Mr. Fisher's Rights Impacts Few People .............................. 23-24

    Relying on Hawaii's Pardon Mechanism Alone Violates
    the Procedural Due Process Clause of the 14th Amendment ................ 24-27

CONCLUSION ................................................................................................ 27

STATEMENT OF RELATED CASES ................................................................. 28

CERTIFICATE OF COMPLIANCE ....................................................................... 29

CERTIFICATE OF SERVICE ............................................................................... 29

# TABLE OF AUTHORITIES

**Page**

**CASES**

Bannon v. U.S., 156 U.S. 464 (1895) ....................................................... 14

Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002) ................................................. 9

Baysden v. State, 681 S.E. 2d 699 (N.C. Ct. App. 2011) ....................................... 20

Berger v. City of Seattle, 569 F.3d 1029 (9th Cir. 2009) ......................................... 2

Binderup v. Holder (E.D. Pa. Sept. 25, 2014) ....................................................... 20

Brady v. Gebbie, 859 F.2d 1543 (9th Cir. 1988) ................................................. 24

Britt v. State, 681 S.E. 320 (N.C. 2009) ................................................................ 20

Carey v. Piphus, 435 U.S. 247 (1978) .................................................................. 24

Caron v. United States, 524 U.S. 308 (1998) ........................................................ 11

District of Columbia v. Heller,
554 U.S. 570 (2008)...................................... 2, 3, 11, 12, 14-16, 23, 26, 27

Ezell v. City of Chicago, 651 F.3d 684 (7th Cir. 2011) ......................................... 17

Fasset v. Smith, 23 N.Y. 257 (1891) ..................................................................... 14

Hewitt v. Grabicki, 794 F.2d 1373 (9th Cir. 1986) ............................................... 25

In Re Bergin, 31 Wis. 383 (1872) ........................................................................ 13

Largent v. Texas, 318 U.S. 418 (1943) ................................................................. 26

iv

Logan v. United States, 552 U.S. 23 (2007) ............................................................ 9

Low v. SEC, 472 U.S. 181 (1985) ...................................................................... 10

Mathews v. Elridge, 424 U.S. 319 (1976) .......................................................... 25

McDonald v. City of Chicago, 130 S.Ct. 3020 (2010) ....................... 2, 11, 16, 26

Nunez by Nunez v. City of San Diego, 114 F.3d 935 (9th Cir. 1997) .................... 2

People v. Hanrahan, 75 Mich. 611, 42 N.W. 1124 (1889) ................................... 13

People v. Chandler, 203 Cal.App. 3d 782 (1988) ................................................ 19

Peruta v. County of San Diego (9th Cir. Feb. 13, 2014) ....................................... 23

Reiter v. Sonotone Corp., 442 U.S. 330 (1979) ................................................... 10

Salinas v. United States, 522 U.S. 52 (1997) ........................................................ 9

St. Joseph Stock Yards Co. v. United States, 298 U.S. 38 (1936) ....................... 26

Twentieth Century-Fox Film Corp. v. MCA, Inc.,
715 F.2d 1327 (9th Cir. 2009) ............................................................................... 2

United States v. Barton, 633 F.3d 168 (3rd Cir. 2011) ......................................... 19

United States v. Chester, 628 F.3d 673 (4th Cir. 2010) ....................................... 16

United States v. Chovan, 735 F.3d 1127 ............................................. 18, 19, 21-23

United States v. Duckett, 406 Fed. Appx. 185 (9th Cir. 2010) ............................. 20

United States v. Logan, 453 F.3d 804 (7th Cir. 2006) .......................................... 10

United States v. McCane, 573 F.3d 1037 (10th Cir. 2009) ................................... 20

United States v. Moore, 666 F.3d 313 (4th Cir. 2012) ......................................... 19

United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) ........................................... 17

United States v. Williams, 616 F.3d 685 (7th Cir. 2010) ....................................... 20

## CONSTITUTIONS

### United States Constitution

First Amendment ..................................................................................... 2

Second Amendment ..................................................... 1-3, 10-12, 14-18, 20, 22, 23

Fourteenth Amendment .................................................... 1, 3, 11, 24, 27

### Hawaii Constitution

Haw. Const., Art. V §5 ........................................................................ 25

## STATUTES

### Federal Statutes

18 U.S.C.A. §921 et seq.
("The Gun Control Act of 1968") ....................................................... 2, 9

18 U.S.C. §921(a)(20) ........................................................................ 11

18 U.S.C. §921(a)(33)(B)(ii) .......................................................... 9, 10, 12

18 U.S.C. §922(g)
("Lautenberg Amendment") ............................. 1, 2, 3, 7-12, 17, 18, 20, 22- 24, 27

28 U.S.C. §1291 ................................................................................ 1

28 U.S.C. §1292(a) ............................................................................ 1

28 U.S.C. §1343 ................................................................................ 1
42 U.S.C. §1983 ................................................................................ 1

## State Statutes

18 Pa. C.S.A. §6301 ................................................ 20

California Penal Code §1203.4a(a) ....................................... 19

California Penal Code §1203.4a(c)(1) ..................................... 19

California Penal Code §1203.4a(f) ....................................... 19

Haw. Rev. Stat. §134-2 ............................................... 3

Haw. Rev. Stat. §134-7 ................................ 1, 3-5, 7-9, 16, 18, 21-23, 27

Haw. Rev. Stat. §353-72 ............................................. 25

Haw. Rev. Stat. §709-906 ............................................ 4

Haw. Rev. Stat. §711-1106(1)(a) ....................................... 3

Haw. Rev. Stat. §806-11 ............................................. 4

Haw. Rev. Stat. §831-3.2 ............................................ 11

## RULES

Federal Rules of Civil Procedure 56(c) ................................... 2

## OTHER

4 William Blackstone, Commentaries 5 ................................. 13

4 William Blackstone, Commentaries 15 ............................... 13

4 William Blackstone, Commentaries 94 ............................. 13, 14

William Lawrence Clark, William Lawrence Marshal New York,
Fred B. Rothman & Co. A, Treatise of the Law of Crime (1905) ......... 14

Robert Dowlut, the Right to Arms: Does the Constitution or the
Predilection of Judges Reign? ................................................................ 15

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant, Kirk Fisher ("Mr. Fisher") seeks injunctive relief to have Hawaii Revised Statute (H.R.S.) Section 134-7 ruled unconstitutional as applied to him. The statutory provision cited above violates Mr. Fisher's rights as guaranteed by the Second and Fourteenth Amendments to the United States Constitution. Accordingly, Mr. Fisher seeks relief pursuant to 42 U.S.C. § 1983 and 28 U.S. § 1343. The District Court has jurisdiction over this case pursuant to them. On, July 18, 2014, the District Court granted Defendants' Motion for Summary Judgment. Mr. Fisher timely filed his Notice of Appeal on August 6, 2014, and this Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 1292(a).

# STATEMENT OF THE ISSUES PRESENTED

Whether the District Court erred in granting Defendants' Motion to Dismiss when it held: A) Defendants may properly apply the Lautenberg Amendment via H.R.S. §134-7 even though H.R.S. §134-7's only mechanism to restore constitutional rights is via a gubernatorial pardon, and B) The Lautenberg Amendment can be constitutionally applied to Mr. Fisher.

# REVIEWABILITY AND STANDARD OF REVIEW

An order granting summary judgment on the constitutionality of a statute or ordinance is reviewed de novo. *Nunez by Nunez v. City of San Diego*, 114 F.3d

935 (9th Cir. 1997). The standard governing this Court's review is the same as that employed by trial courts under Rule 56(c), with the Court determining, after independently viewing the evidence and all inferences therefrom in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the law. *See Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328-29 (9th Cir. 1983); *see also, Berger v. City of Seattle*, 569 F.3d 1029, 1035 (9th Cir. 2009) (independent review of questions of law and fact in First Amendment case).

## STATEMENT OF THE CASE

The Lautenberg Amendment, 18 U.S.C. § 922(g)(9), ("Lautenberg") amends the Gun Control Act of 1968 (18 U.S.C. § 921et seq.) and prohibits any person who "has been convicted in any court of a misdemeanor crime of domestic violence" from owning a firearm.   Since its adoption, the United States Supreme Court issued the landmark decision *District of Columbia v. Heller*, 554 U.S. 570 (2008). In that case, the Court held that "ban[s] on handgun possession in the home violate the Second Amendment as does [a] prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense."   *Heller,* 554 U.S. at 635. Two years after Heller, in *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), the Court held that the right to keep and bear arms was a fundamental

right, made applicable to the states through the Fourteenth Amendment.

This case arises out of the City's denial of a firearm permit to Mr. Kirk Fisher, a permit required by H.R.S. §134-2 to own a firearm within one's own home. The City relies on Fisher's 1997 petty misdemeanor Harassment conviction under H.R.S. §711-1106(1)(a) to argue that pursuant to H.R.S. §134-7 and the Lautenberg Amendment he is precluded from owning a firearm. However, such application of the Lautenberg Amendment to Mr. Fisher is an unconstitutional denial of his rights because, with the sole inapplicable exception of a gubernatorial pardon, Hawaii has no means to set aside, expunge or otherwise restore constitutional rights as required by 18 U.S.C. § 922(g)(9). Accordingly, H.R.S. §134-7 has no federal mandate. This Court must look to the underlying Common Law offense Mr. Fisher was convicted of, i.e. battery, and determine whether this conviction constitutes grounds for being disarmed 17 years post-conviction.

## STATEMENT OF FACTS

This cases arises out of the wrongful violation of Mr. Fisher's right to keep and bear arms pursuant to the Second and Fourteenth Amendments to the United States Constitution.

Mr. Fisher is a natural person and a citizen of the United States of America, State of Hawaii and a resident of the City and County of Honolulu. Pl.'s Am.

Compl. at 2, 4. At all relevant times, Mr. Fisher is and was at least twenty-one years of age. Id. at 4.

On November 5, 1997, Mr. Fisher was arrested on two counts of Abuse of Household Member, in violation of H.R.S. §709-906. Id. at 6.

In or around November 20, 1997, Mr. Fisher owned firearms, and pursuant to a Family Court Order implementing H.R.S. §806-11 and §134-7, transferred said firearms to the Defendant Honolulu Police Department. Id.

On December 3, 1997, Mr. Fisher pled guilty to two counts of petty misdemeanor Harassment in the Family Court of the First Circuit, State of Hawaii (State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233). Mr. Fisher was sentenced to six (6) months probation. Id.

The transcripts/audio recordings of the December 3, 1997, hearing have since been destroyed per judiciary retention statutes. The retention period for a FC-CR hearing is ten (10) years after trial has commenced. Id.

On November 4, 1998, two years after implementation of Lautenberg, the Honorable Dan Kochi issued an "Order Permitting Return of Firearms, Ammunition, Permits and Licenses, With Conditions." Id. at 6-7.

Following this order, Defendant Honolulu Police Department promptly returned Mr. Fisher's firearms. Id. at 7.

More than ten years later, in the fall of 2009, Mr. Fisher submitted an application to Defendant Honolulu Police Department to acquire an additional firearm. Id.

On October 1, 2009, Defendant Putzulu responded through his subordinate Major Kurt B. Kendro of the HPD Records and Identification Division, by denying Mr. Fisher's application, and informed him that pursuant to H.R.S. §134-7, he was disqualified from firearm ownership and possession. Id.

Defendant Putzulu further ordered Mr. Fisher to surrender to the chief of police or otherwise lawfully dispose of his firearms and ammunition within thirty (30) days. Id. at 7-8.

Mr. Fisher promptly contacted Defendant Honolulu Police Department and was informed that he was disqualified because of the prior petty misdemeanor Harassment conviction in State of Hawaii v. Kirk C. Fisher, FC-CR No. 97-3233. Mr. Fisher was also informed by Defendant Honolulu Police Department that it was Defendant Honolulu Police Department's custom, practice and policy to review the police reports to determine whether or not a defendant's alleged crime was a crime of violence. Mr. Fisher was further informed that Defendant Putzulu's decision was final and there were no appellate remedies. Id. at 8.

Thereafter, Mr. Fisher transferred ownership and possession of all of his

firearms to his wife of more than twenty five years, Collette Fisher, after she obtained the proper permits.    Id.

On June 10, 2010, through counsel, Mr. Fisher filed a Motion to Enforce Order Permitting Return of Firearms, Ammunition, Permits and Licenses, with Conditions, in the Family Court of the First Circuit, State of Hawaii, FC-CR No. 97-3233.    Id. at 9-10.

Said Motion came on for hearing before the Honorable Darryl Y.C. Choy in the Family Court of the First Circuit, State of Hawaii on June 22, 2010.    Said Motion was denied.    No Findings of Fact or Conclusions of Law were entered. Id. at 10.

On August 31, 2010, Mr. Fisher, through counsel, wrote to Defendant Kealoha and requested that Defendant Honolulu Police Department grant his Application for Permit to Acquire Firearms and to rescind the prior order instructing Mr. Fisher to surrender or dispose of his firearms.    Id.

On September 29, 2010, Defendant Kealoha responded to Mr. Fisher's inquiry by re-affirming Defendant Putzulu's prior denial of Mr. Fisher's application.    Id.

On March 19, 2012, Mr. Fisher filed a Motion for Preliminary Injunction. On June 29, 2012, the District Court issued an injunction directing Kealoha to

issue a permit authorizing Mr. Fisher to acquire firearms ("2012 Preliminary Injunction Order"). The Court's injunction directed Kealoha to "rescind the prior denial of Plaintiff's permit to acquire firearms and to issue a permit authorizing Plaintiff to acquire firearms." 2012 Preliminary Injunction Order at 36. Defendants filed a Motion for Reconsideration, which the Court denied.

On February 25, 2013, Mr. Fisher filed a Motion for Summary Judgment and a Motion for Permanent Injunction. On September 30, 2013, the Court issued an "Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying Plaintiff's Motion for Permanent Injunction." ("Sept. 30 Order"). In so ruling, the Court granted in part Plaintiff's Motion for Summary Judgment regarding whether Plaintiff's prior harassment convictions prohibit him from acquiring a firearms permit pursuant to 18 U.S.C. §922(g)(9), H.R.S. §134-7(a), and H.R.S. §134-7(b), denied in part Plaintiff's Motion for Summary Judgment regarding whether Plaintiff is prohibited from acquiring a firearms permit pursuant to H.R.S. §134-7(c), and denied Plaintiff's Motion for Permanent Injunction.

On April 2, 2014, Defendants filed a Motion for Summary Judgment or, in the Alternative, Motion for Reconsideration. At the hearing on June 16, 2014, Mr. Fisher submitted a declaration from Mr. Fisher's treating physician, Dr. Tsai,

dated June 14, 2014.   Dr. Tsai states in his declaration that Mr. Fisher "is not

adversely affected by [ ] an addiction to, abuse of, or dependence upon any

dangerous drug, harmful drug, detrimental drug, intoxicating compound, or

intoxicating liquor."   On July 18, 2014, the Court issued at "Order Granting

Defendants' Motion for Summary Judgment or, in the Alternative, Motion for

Reconsideration."

## SUMMARY OF ARGUMENT

H.R.S. §134-7 bans the ownership of firearms by anyone convicted of "a

crime violence" or prohibited by Federal law.   Defendants purport to apply 18

U.S.C. § 922(g)(9) (the Lautenberg Amendment) via H.R.S. §134-7.   However

H.R.S. §134-7 has no means to expunge or set-aside a conviction as Federal law

requires in order to properly apply the Lautenberg Amendment.   Thus, H.R.S.

§134-7 must be judged on its own merits.   Moreover, as Defendants have not

properly applied Lautenberg, the matter before this Court is whether the underlying

common law offense, i.e. battery, is grounds for disarming Mr. Fisher some 17 year

after conviction of petty misdemeanor Harassment.   As shown below H.R.S.

§134-7 is unconstitutional as applied to Mr. Fisher.

# ARGUMENT

Hawaii applies Lautenberg (and all other applicable federal law) via H.R.S. § 134-7. In doing so, Hawaii has failed to adopt the plain language of the law by not providing a means to restore rights. Pursuant to common statutory interpretation, the inquiry begins with a determination of whether the language of the statute is unambiguous and whether the statutory scheme is consistent and coherent. *Barnhart v. Sigmon Coal Co*., 534 U.S. 438 (2002). *See also, Salinas v. United States* , 522 U.S. 52 (1997). The statutory language that this Court must interpret regarding Plaintiff 's claims is set forth in 18 U.S.C. § 921(a)(33)(B)(ii):

> A person shall not be considered to have been convicted of such an offense for purposes of this chapter [18 USCS§§ 921 et seq.] if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

In *Logan v. United States*, 552 U.S. 23 (2007), a unanimous court took up the anomalies that arise from statutes that purport to restore rights that were never taken away. That Court placed some weight on whether the offender's post-conviction status was unaltered by any dispensation of the jurisdiction where the conviction occurred. *Id* at 26. That same Court went on to cite with approval the language

9

from the Circuit Court, which held that "an offender whose civil rights have been neither diminished nor returned is not a person who 'has had civil rights restored.'" *United States v. Logan*, 453 F.3d 804, 805 (7th Cir. 2006). The plain and unambiguous language of 18 U.S.C. § 921(a)(33)(B)(ii) contemplates some state law procedure for restoration of any civil rights forfeited under state law due to Lautenberg.

Courts are required to give meaning to every word in a statute. This is especially important to prevent a provision of the law being reviewed from being rendered pointless. *See, e.g., Low v. SEC*, 472 U.S. 181, 207 n.53 (1985) ("[W]e must give effect to every word the Congress used in the statute"); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used") In-other-words, Congress intended for there to be some state sanctioned means of restoring the Second Amendment rights that are suspended by Lautenberg. Those means are left to the various states, but must include: (1) set-aside of the conviction, (2) expungement of the conviction, (3) pardon and (4) restoration of rights.

While Hawaii does have an expungement statute for persons convicted of a crime, Hawaii's expungement statute only applies to persons "arrested for, or

charged with but not convicted of a crime." *See* Haw. Rev. Stat. §831-3.2. In other words, there is no mechanism in Hawaii that allows for a person convicted of a crime to have his/her conviction expunged or set aside. Similarly, post-conviction relief, when applicable, requires a defect in the original conviction and does not apply to those properly convicted. Accordingly, Mr. Fisher's only avenue to restoring rights is via a gubernatorial pardon. Even if this were a proper application of the Lautenberg Amendment, Hawaii's pardon process, as shown below, violates the procedural due process clause of the Fourteenth Amendment.

Hawaii's reliance on Lautenberg is misplaced and the state has no federal mandate to deprive Mr. Fisher of his Second Amendment rights. Furthermore, since *Heller* and *McDonald* have judicially elevated the status of the rights secured by the Second Amendment to individual, fundamental civil rights it is clear that Hawaii's actions against Mr. Fisher are unconstitutional. This proposition finds support in *Caron v. United States* 524 U.S. 308(1998), where the 'unless clause' of 18 U.S.C. § 921(a)(20) was dispositive. In that case, the defendant was subjected to a harsher sentence because while Massachusetts law restored his right to possess shotguns and rifles, it did not restore his right to possess handguns. It was the qualified restoration of rights under Massachusetts law that triggered the 'unless clause' that led to the harsher result. When enacted 18 U.S.C. § 921(a)(33)(B)(ii) contemplated

11

that some state law procedure for restoration of any civil rights forfeited under state law would exist. And, since Hawaii does not have a procedure enacted to restore rights, its reliance on Lautenberg to take rights away from individuals is without merit. Accordingly, one must look to the underlying common law offense of battery to see if Defendants can permissibly continue to take away Mr. Fisher's Second Amendment rights.

## Heller Holds Common Law Felons Disqualified From 2nd Amendment Rights

The Supreme Court in Heller gave assurances that:

> " [n]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms insensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms ." *Id*. at 626-27.

The Court in *Heller* explained the Second Amendment was a codification of pre-existing rights available at common law. Accordingly, restrictions against groups at common law were enumerated as presumptively constitutional. Accordingly, one must conduct a historical analysis of what groups are presumptively disqualified by the Common Law to determine the constitutionality of Defendants disarming Mr. Fisher.

At Common Law there were three classes of crimes. Blackstone

inaccurately defined a crime as "an act committed or omitted in violation of a public law either forbidding or commanding it" 4 Bl. Comm. 15. An act was not necessarily a crime just because it was prohibited by a public law. It is necessary to look further and ascertain the ground upon which the act was punished and by whom the punishment is imposed. To constitute a crime, an act had to have been punished to protect the public and punishment had to have been dealt by the State or other sovereign power. While Blackstone speaks of "crimes and misdemeanors" (4 Bl. Comm. 5) the term crime actually included all criminal offenses. Thus in the case of *In re Bergin*., 31 Wis. 383 (1872), it was held that any wrong against the public which is punishable in a criminal proceeding prosecuted by the state in its own name or in the name of the people, or of the sovereign, is a crime within the meaning of the constitutional prohibition against involuntary servitude except as a punishment for a crime and that the term therefore includes both felonies and misdemeanors. See also, *People v. Hanrahan,* 75 Mich. 611, 42 N.W. 1124 (1889).

There were classes of Crimes: Treasons, Felonies and Misdemeanors. At common law, felonies were those offenses which occasioned forfeiture of the lands and goods of the offender and to which might be added death or other punishment according to the degree of guilt. 4. Bl. Comm. 94; *Fasset v. Smith* , 23 N.Y. 257(1891); *Bannon v. U.S*., 156 U.S. 464 (1895). The Common Law felonies were

murder (this included suicide), manslaughter, rape, sodomy, robbery, larceny, arson, burglary, and arguably mayhem. *See* William Lawrence Clark, William Lawrence Marshal New York, Fred B Rothman & Co., A Treatise on the Law of Crime (1905) at 12. All other crimes were either misdemeanors or treasons.

Treason - At common law treason was divided into petit or high treason. High treason was the compassing of the King's death, and aiding and comforting of his enemies, the forging or counterfeiting of the privy seal, or the killing of the chancellor, or either of the king's justices; and petit treason was where a wife murdered her husband, an ecclesiastic his lord or ordinary, or a servant his master. In this country, treason is defined by the Constitution of the United States, and consists of levying of war against the United States, or adhering to their enemies, giving them aid and comfort. *Id* at 10. At common law all other crimes were misdemeanors.

Felony by Statute - Since the ratification of the Second Amendment many crimes which at common law were misdemeanors have been lifted by statute to felony. However, *Heller* teaches us that constitutional rights and their limitations should be viewed at the time they were enshrined. Accordingly, crimes deemed felonies by the modern day legislature do not presumptively disqualify one from Second Amendment rights. To find otherwise would to allow a future legislature to

disarm the citizenry by lifting even the pettiest offense (such as speeding or littering) to felony. The *Heller* Court clearly did not intend that and the only crimes which presumptively disqualify one from Second Amendment rights are Common Law felonies and presumably treason as defined by the United States Constitution.

Accordingly, the question one must ask when determining whether a person is presumptively disqualified from Second Amendment rights is: what classes of persons does *Helle*r refer when it states felons and the mentally ill are precluded from Second Amendment rights? It is those classes which were precluded in 1791, i.e., non-virtuous citizens. The classical republican notions inextricably linked to the Founding of the United States emphasized civic virtue, i.e., the virtuous citizenry. Historically, the State disarmed non-virtuous citizens and those like children or the mentally unbalanced, who were deemed incapable of virtue. *See, e.g*. Robert Dowlut, The Right to Arms: Does the Constitution or the Predilection of Judges Reign? 36 OKLA. L.REV. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded infants, idiots, lunatics, and felons [from possessing firearms]."). Accordingly the ultimate question what is civic virtue? In the political philosophy inextricably tied to the Founding of our nation a person with civic virtue possessed qualities associated with the effective functioning of the civil and political order, or the preservation of its

values and principles. A conviction for the common law crime of battery does not presumptively preclude one from possessing civic virtue.

As Mr. Fisher's crime does not presumptively disqualify him from Second Amendment rights the burden is on the government to prove Mr. Fisher should be disqualified from Second Amendment rights. Hawaii's "crime of violence" provision is a product of the modern legislature. Therefore, it is not a longstanding doctrine of American jurisprudence, or one of the enumerated historical prohibitions on the bearing of arms. Accordingly, it must survive heightened scrutiny or the statute fails constitutional muster as applied to Mr. Fisher. H.R.S. § 134-7, in light of *Heller* and *McDonald,* must survive strict scrutiny. As such, the government bears the burden of producing evidence that forbidding rehabilitated misdemeanants, with a long history of law-abiding conduct since their conviction, from exercising their rights serves a compelling government interest and that a complete lifetime ban on exercising the right is necessary to achieve that interest. *See U.S. v. Chester*, 628 F.3d 673 (4th Cir. 2010); *see also Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). Defendants have not and cannot provide a compelling government interest in permanently disarming Mr. Fisher.

Mr. Fisher should prevail on his Second Amendment claim because the

H.R.S. is unconstitutional to the extent that it fails to provide a procedure for restoration of his Second Amendment rights. This was exactly the reasoning given by a Seventh Circuit en banc panel when it upheld a state's application of Lautenberg against a Second Amendment challenge. *See United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc), cert. denied, *Skoien v. United States*, 2011 U.S. LEXIS 2138(2011). In upholding a conviction for 18 U.S.C. § 922(g)(9), the Seventh Circuit emphasized that Mr. Skoien was a recent, multiple offender having been convicted of domestic violence against his wife in 2003 and his fiancé in 2006. Based on these facts, the Court found that he was "poorly situated to contend that the statute creates a lifetime ban for someone who does not pose any risk of further offenses." *Skoien* at 645. In contrast, Mr. Fisher has been a law-abiding citizen since 1997. The Seventh Circuit's en banc panel also placed great weight on the fact that Lautenberg did not impose a perpetual disqualification for persons convicted of domestic violence. *Skoien* at 644. ("Restoration procedures that address the potential for recidivism and insure that reinstatement of the 'right to keep and bear arms ' does not endanger victims or the public, is essential to upholding its constitutionality").

## Chovan Supports the Need For Restoration Procedures

Defendants suggest that H.R.S. §134-7 is an application of federal law to Mr.

Fisher.   As the Ninth Circuit ruling in *United States v. Chovan,* 735 F.3d 1127 (9th

Cir. 2013) illustrates, H.R.S. §134-7 has no federal mandate and is unconstitutional

as applied to Mr. Fisher.   The Ninth Circuit applied intermediate scrutiny in finding

California's adoption of Lautenberg fulfills federal intent and is constitutional

largely because California has an expungement process which allows domestic

violence offenders to regain their firearms rights.   Unlike California, Hawaii has no

means to expunge or set aside a conviction of any crime of violence.   Accordingly,

Hawaii cannot purport to properly apply federal law because Lautenberg explicitly

requires States to have some procedure to restore rights in order to properly apply its

provisions.   The plain language of the Lautenberg Amendment contemplates some

mechanism for reinstating Second Amendment rights after a misdemeanor

conviction for domestic violence by having the conviction set aside or expunged. 18

U.S .C. § 9 21(a )(33 )(B)(i i). Such is the case in California.

> California, where Chovan was convicted, makes expungement
> of misdemeanor convictions a right. Under § 1203.4a(a) of the
> California Penal Code, all misdemeanants can have their convictions
> expunged after completion of their sentences if they have not been
> charged with or convicted of a further crime and have "lived an honest
> and upright life." Moreover, defendants must be informed of this right
> to expungement "either orally or in writing, at the time he or she is
> sentenced." Id.   at § 1203.4a(c)(1). Prosecuting attorneys have
> fifteen days from the filing of the petition for dismissal with the court to
> object.   Id.   at § 1203.4a(f). This participation of the district attorneys
> in the process allows California to maintain some adversarial integrity

in the expungement proceedings, as the district attorney can oppose the motion if the convict's rehabilitation is doubtful. This system places the evaluation of the convict's rehabilitation, vel non, in the state. Indeed, California courts have interpreted § 1203.4a(a) to mandate expungement when misdemeanants have complied with its terms. *See, e.g., People v. Chandler*, 203 Cal.App.3d 782, 250 Cal.Rptr. 730, 734 (1988) ("[A] defendant moving under Penal Code section 1203.4a is entitled as a matter of right to its benefits upon a showing that he has fulfilled the conditions of probation for the entire period of probation. It was apparently intended that when a defendant has satisfied the terms of probation, the trial court should have no discretion but to carry out its part of the bargain with the defendant.") (citations and quotation marks omitted). *United States v. Chovan*, 735 F.3d 1127, 1152 (9th Cir. 2013) .

## Other Modern Jurisprudence Supports The Need For Restoration Procedures

Even in the case of modern felonies many federal courts have stated that the answer under the right circumstances is that a modern felony should not preclude one from firearm ownership. *United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012); *United States v. Barton*, 633 F.3d 168, 174 (3rd Cir. 2011); *United States v. Williams*, 616 F.3d 685, 693 (7th Cir. 2010); *United States v. Duckett*, 406 Fed. Appx. 185, 187 (9th Cir. 2010) (Ikuta, J., concurring); *United States v. McCane*, 573 F.3d 1037, 1049-50 (10th Cir. 2009) (Tymkovich, J., concurring). Some North Carolina state court decisions have actually set aside particular claimants' state-law gun disabilities, under the North Carolina Constitution's right to bear arms provision. *Britt v. State*, 681 S.E.2d 320 (N.C. 2009) (holding that a nonviolent

felon whose crime was long in the past regained his state constitutional right to keep and bear arms); *Baysden v. State*, 718 S.E.2d 699 (N.C. Ct. App. 2011) (same).

*Binderup v. Holder* (E.D. Pa. Sept. 25, 2014) is the first federal court decision to actually set aside a gun disability based on a felony conviction based on Second Amendment grounds. There the plaintiff was precluded from owning firearms due to 18 U.S.C. § 922(g)(1). This was based on a prior conviction for corruption of minors under 18 Pa.C.S.A. § 6301 in 1996. There the Court held that to raise a successful as-applied challenge, a defendant must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. Binderup, the court held, did present such facts about himself and his background. His only conviction was nearly 17 years before. The statistics presented by the government, showing that people with criminal convictions — even nonviolent ones — are likely to commit other crimes were not probative given the nature of the crime, how long ago the crime was. For these reasons, the court held, "[P]laintiff has demonstrated that, if allowed to keep and bear arms in his home for purposes of self-defense, he would present no more threat to the community that the average law-abiding citizen." *Id*.

Similarly, Mr. Fisher has demonstrated that he is no more of a threat to the

community than the average law abiding citizen. As a practical matter, Mr. Fisher has actually lawfully owned firearms for the vast majority of time since his conviction. He has demonstrated that his crime, the common misdemeanor of battery is not one that historically presumptively disqualified one from firearms ownership. Moreover since his conviction in 1997 he has not been convicted of a crime and otherwise has lived an upstanding life. For all those reasons he is a rehabilitated member of the community. Yet due to Hawaii law solely he remains disarmed with no real mean to restore his firearm rights.

## Mr. Fisher Only Challenges Hawaii Law

This Court has no need to look beyond H.R.S. 134-7 to determine whether Defendants conduct is constitutional. Unlike the litigant in *Chovan*, Mr. Fisher grievance is Hawaii law unconstitutionally deprives him of his Second Amendment rights. Hawaii law has no federal mandate and any reliance Defendants place on it is fallacious as *Chovan* supports.

> . . . Chovan goes too far when he argues that§ 922(g)(9) is too broad because it "contains no provision limiting its applicability." As explained above, § 922(g)(9) exempts those with expunged, pardoned, or set-aside convictions, or those who have had their civil rights restored. Therefore, while we recognize that § 922(g)(9) substantially burdens Second Amendment rights, the burden is lightened by these exceptions. *Id* at 1138.

Unlike what federal law requires, Hawaii gives no means for its citizens to prove that they have been rehabilitated. Accordingly, H.R.S. §134-7 does not have a federal mandate and must be judged on its own merits. As applied to Mr. Fisher it is unconstitutional. *Chovan* is highly distinguishable. It follows a series of cases addressing the constitutionality of removing firearms rights for domestic violence as defined by Congress. In order to have a federal mandate a state must have enacted a restoration process. Mr. Fisher has no means to establish he is no longer a person that should not possess firearms other than by pardon. .Congress did not intend for persons so situated to be punished via Lautenberg. This Court must use Chovan's two step analysis and independently analyze H.R.S. §134-7's constitutionality as applied to Mr. Fisher. The first step is: did Mr. Fisher commit a crime that at Common Law disqualified one from Second Amendment rights?

Here, Mr. Fisher was convicted of the common law misdemeanor offense of battery. Conviction of a common law misdemeanor does not presumptively remove Second Amendment rights. Hence, removal of rights pursuant to a common law misdemeanor, must survive heightened scrutiny in order to survive constitutional muster. Strict scrutiny should be used evaluate the use of a slight offensive touching as a basis to remove Second Amendments rights. However as

held in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and more recently by the

Ninth Circuit in *Peruta v. County of San Diego* (9th Cir. Feb. 13, 2014), a

categorical/permanent ban on Mr. Fisher's right to own a handgun is

unconstitutional applying any level of scrutiny.   As Mr. Fisher has no real means to

regain his rights, the result is the same here.   Applying any level of scrutiny,

Defendants' actions result in a complete destruction of Mr. Fisher's rights and, as

applied to Mr. Fisher, H.R.S. §134-7 is unconstitutional.

## Restoring Mr. Fisher's Rights Impacts Few People

The *Chovan* Court noted in ruling against the litigant's as applied challenge

would create a "a significant exception to § 922(g)(9)" when "Congress permissibly

created a broad statute that only excepts those individuals with expunged, pardoned,

or set aside convictions" .   Ruling in favor of Mr. Fisher will impact a very small

group of Hawaiian residents who would be entitled and eligible to have their rights

restored if the Hawaii Revised Statutes adopted federal law appropriately.

In Hawaii the only mechanism to restore rights is via gubernatorial pardon.

Any suggestion that this is sufficient to fulfill Congressional intent is outrageous as a

pardon can be given for any crime.   This fails the basic canons of statutory

construction and reason.   Why would Congress put language in the Lautenberg

Amendment for set aside/expungement/restoration procedures if a gubernatorial

pardon was sufficient to enact federal law?   Even if a gubernatorial pardon is

sufficient, Hawaii's pardon mechanism violates the Procedural Due Process Clause

of the Fourteenth Amendment.

## Relying on Hawaii's Pardon Mechanism Alone Violates The Procedural Due Process Clause Of The Fourteenth Amendment

The Fourteenth Amendment protects against the deprivation of property or

liberty without due process.   *See Carey v. Piphus* , 435 U.S. 247, 259 (1978);

*Brady v. Gebbie* , 859 F.2d 1543, 1547 (9th Cir. 1988).   Courts employ a two-step

test to determine whether due process rights have been violated by the actions of a

government official.   First, a court must determine whether a liberty or property

interest exists entitling a plaintiff to due process protections.   If a constitutionally

protected interest is established, courts employ a three-part balancing test to

determine what process is due.   *Hewitt v. Grabicki* , 794 F.2d 1373, 1380 (9th Cir.

1986).   The three-part balancing test set forth in *Mathews v. Eldridge* examines (1)

the private interest that will be affected by the official action; (2) the risk of an

erroneous deprivation of such interest through the procedures used, and the probable

value, if any, of additional or substitute procedural safeguards; and (3) the

Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement

would entail.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The power to grant pardons of state convictions is vested in the Governor. Haw. Const., art. V, § 5.   The Governor seeks the recommendation of the director of public safety and the Hawaii State Paroling Authority, but the governor's pardon power is independent.   *See* Haw. Const., art. V, § 5; Haw. Rev. Stat. § 353-72 (directory of public safety and Paroling Authority "shall consider every application for pardon which may be referred to them by the governor").   However, the decision to pardon is solely within the Governor's unbridled discretion without any mechanism to appeal a denial no matter how erroneous.

Post- *McDonald*, Mr. Fisher has a liberty interest in his right to bear arms outside the home.   Whether or not a gubernatorial pardon is granted is an arbitrary decision subject to the whim of the Governor.   *See Largent v. Texas* , 318 U.S. 418, 422 (1943) (striking ordinance allowing speech permit where mayor "deems it proper". )   The risk of continued deprivation of the interest is great.   The governor's decision is absolute and final.   The governor is not required to disclose the reasons for denying the application.   Further, despite the clear deprivation of a liberty and property resulting in this policy or lack thereof, an applicant has no opportunity to seek judicial, appellate or even administrative review of the

governor's decision.

Amending the pardon process to comport with due process would impose only the imposition of some appellate process and guidelines. In deciding this matter, this Court should consider that the policies *sub judice* were put in place before *Heller* and *McDonald*. *St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38 (1936) ("the judicial scrutiny must of necessity take into account the entire legislative process, including the reasoning and findings upon which the legislative action rests"). Thus, the legislature, in allowing the Governor to have complete and unbridled control over the pardon process, was under the erroneous assumption that these policies were not affecting fundamental rights. While these policies may have passed constitutional muster pre-*Heller*, the legal landscape has changed dramatically. Accordingly, even assuming a gubernatorial pardon is sufficient to comport with the Lautenberg Amendment, Hawaii's pardon mechanism violates the Fourteenth Amendment and H.R.S. § 134-7 is unconstitutional as applied to Mr. Fisher.

## **CONCLUSION**

Mr. Fisher respectfully requests this Court reverse the lower Court's judgment.

Respectfully Submitted,

/s/ Donald L. Wilkerson
Donald L. Wilkerson
Alan Alexander Beck
Te-Hina Ickes
Counsel for Appellant

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiff-Appellant identify the

following case as related:

There are no related cases in this Circuit.

Dated: Honolulu, Hawaii, November 12, 2014.


/s/ Donald L. Wilkerson
Donald L. Wilkerson
Counsel for Appellant

## CERTIFICATE OF COMPLIANCE
## TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32-3(3) because this brief contains 6,080 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using WordPerfect X5 in 14 point Times New Roman font.

/s/ Donald L. Wilkerson
Donald L. Wilkerson
Counsel for Appellant

## <u>CERTIFICATE OF SERVICE</u>

On this, the 12th day of November 2014, I served the foregoing Brief by electronically filing it with the Court's CM/ECF system, which generated a Notice of Filing and effects service upon counsel for all parties in the case.

I declare under penalty of perjury that the foregoing is true and correct.


<u>/s/ Donald L. Wilkerson</u>
Donald L. Wilkerson
Counsel for Appellant